

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rodney Mullins,

Plaintiff,

-against-

The City of New York; Antonio Edwards;
Undercover Shield Number C0035, Undercover
Shield Number 0206, Freddy Dominguez, Jose
Delrosario, Joseph Townsend, Robert Bernhard,
Roger Mooyoung, Artemio Vega, John Does 1
through 6,

Defendants

ECF CASE

FIRST AMENDED
COMPLAINT AND DEMAND
FOR JURY TRIAL

09 CV 8488 (JSR)

## PRELIMINARY STATEMENT

1.      This is an action for money damages brought pursuant to the Civil Rights Act of

1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of

Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United

States.

## JURISDICTION

2.      This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. §§ 1983 and 1988.

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).

## VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving

rise to the claim occurred in the Southern District of New York.

**JURY DEMAND**

5.     The Plaintiff demands a trial by jury on each and every one of his claims as pled

herein.

**PARTIES**

6.     Plaintiff RODNEY MULLINS is a citizen of the United States and a resident of New

York.

7.     Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within

the State of New York.

8.     The New York City Police Department (the "NYPD") is the department of the City

responsible for, among other functions, arresting persons for offenses and maintaining custody over

such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD,

together with the City, was responsible for the policy, practice, supervision, implementation, and

conduct of all NYPD matters and was responsible for the appointment, training, supervision, and

conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City,

was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed

the Constitutions and laws of the United States and of the State of New York.

9.     At all relevant times herein, defendant ANTONIO EDWARDS was employed by the

NYPD and was acting in the capacity of agent, servant, and employee of the City.

10.     At all relevant time herein, defendant Edwards held the rank of Detective and was

assigned shield number 5118.

11.     At all relevant times herein, defendant Edwards was assigned to the Narcotic Boro

Manhattan North.

-2-

12.     At all relevant times herein, defendant UNDERCOVER SHIELD NUMBER C0035, ("UC C0035") was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

13.     At all relevant times herein, defendant UC C0035 was assigned to the Narcotic Boro Manhattan North.

14.     At all relevant times herein, defendant UNDERCOVER SHIELD NUMBER 0206, ("UC 0206") was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

15.     At all relevant times herein, defendant UC 0206 was assigned to the Narcotic Boro Manhattan North.

16.     At all relevant times herein, defendant FREDDY DOMINGUEZ was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

17.     At all relevant time herein, defendant Dominguez held the rank of Sergeant and was assigned shield number 2485.

18.     At all relevant times herein, defendant Dominguez was assigned to the Narcotic Boro Manhattan North.

19.     At all relevant times herein, defendant JOSE DELROSARIO was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

20.     At all relevant time herein, defendant Delrosario held the rank of Detective and was assigned shield number 2201.

21.     At all relevant times herein, defendant Delrosario was assigned to the Narcotic Boro

Manhattan North.

22.     At all relevant times herein, defendant JOSEPH TOWNSEND was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

23.     At all relevant time herein, defendant Townsend held the rank of Detective and was assigned shield number 5433.

24.     At all relevant times herein, defendant Townsend was assigned to the Narcotic Boro Manhattan North.

25.     At all relevant times herein, defendant ROBERT BERNHARD was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

26.     At all relevant time herein, defendant Bernhard held the rank of Detective and was assigned shield number 1725.

27.     At all relevant times herein, defendant Bernhard was assigned to the Narcotic Boro Manhattan North.

28.     At all relevant times herein, defendant ROGER MOOYOUNG was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

29.     At all relevant time herein, defendant Mooyoung held the rank of Detective and was assigned shield number 3281.

30.     At all relevant times herein, defendant Mooyoung was assigned to the Narcotic Boro Manhattan North.

31.     At all relevant times herein, defendant ARTEMIO VEGA was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

32.     At all relevant time herein, defendant Vega held the rank of Detective and was

assigned shield number 29916.

33.     At all relevant times herein, defendant Vega was assigned to the Narcotic Boro Manhattan North.

34.     At all relevant times herein, defendant JOHN DOES 1 and 6 were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

35.     Plaintiff is unable to determine the actual names of John Does 1 through 6 at this time and thus sues them under fictitious names.

36.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The individual defendants were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

## STATEMENT OF FACTS

37.     On August 14, 2009, at approximately 7:50 PM, Plaintiff Rodney Mullins was walking southbound on Adam Clayton Powell, Jr. Boulevard between West 115th and 114th Streets in the City, County and State of New York.

38.     At that time and place, a number of the defendant officers, including defendant Edwards, placed Mr. Mullins under arrest without probable cause to do so.

39.     The officers handcuffed Mr. Mullins behind his back and placed him in a police van,

in which he was driven around for several hours before they eventually brought him to the 28th Precinct.

40.     At the precinct, two of the defendant officers subjected Mr. Mullins to a search in which they ordered him strip naked, to squat in front of them to spread apart his buttocks with his hand and to cough. He was further order to lift his genitals in front of the officers . Having no real choice in the matter, Mr. Mullins complied with these directives.

41.     Mr. Mullins was eventually arraigned on August 15, 2009 in New York City Criminal Court, New York County, on charges of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1). Bail was set and the case was adjourned until August 20, 2009 for grand jury action.

42.     On August 20, 2009, a grand jury before which Mr. Mullins testified, voted a no true bill.

43.     Mr. Mullins case was subsequently dismissed on the motion of the New York County District Attorney and, after six days in custody, Mr. Mullins was final released.

44.     The Criminal Court complaint under which Mr. Mullins was charged alleged that at 7:50 PM he handed defendant UC 0035 (who is presumably defendant UC C0035) "a quantity of crack/cocaine in exchange for a sum of U.S. currency." No drugs, marked or "pre-recorded buy money" were recovered from Mr. Mullins, who was placed under arrest within minutes of the alleged transaction.

45.     The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that

they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

46.     This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

47.     All other paragraphs herein are incorporated by reference as though fully set forth.

48.     By arresting, detaining, charging and strip searching plaintiff Rodney Mullins, the individual defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment, and malicious prosecution.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

49.     All other paragraphs herein are incorporated by reference as though fully set forth.

50.     Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

51.     At all times material to this complaint, the defendant City, acting through the NYPD

and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

52.    At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

1.    Assume jurisdiction over this matter;

2.    Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

3.    Award plaintiff reasonable costs, disbursements and attorneys' fees; and

4.    Grant any other relief the court deems appropriate.

Dated:  New York, New York
        December 12, 2009

Respectfully submitted,

Darius Wadia, L.L.C.

By:  Darius Wadia (Bar number DW8679)
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com

-8-